IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Paulette A. Myers, | ) | C.A. No.: 2:15-cv-02869-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **O R D E R** |
| | ) | |
| Dollar General Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff filed the instant action in the Georgetown County Court of Common Pleas on May 14, 2015; Defendant subsequently removed the case to this court. (*See generally* Dkt. No. 1.) After the parties consented to having the case referred to a Magistrate Judge, the Honorable Richard M. Gergel issued an Order on May 26, 2016 referring the case to the undersigned. (Dkt. No. 18.)

Jury selection was held on August 23, 2016, and the matter was tried before a jury on August 29, 2016 and August 30, 2016. (Dkt. No. 33; Dkt. No. 41; Dkt. No. 45.) On August 29, 2016, the jury returned a verdict in favor of the Plaintiff on Plaintiff's claims for negligence and slander; the jury returned a verdict in favor of Defendant on Plaintiff's claim for false imprisonment. (Dkt. No. 43.)[1] On August 30, 2016, the jury awarded Plaintiff $250,000 in punitive damages on her claim for slander but found that Plaintiff was not entitled to punitive damages on her claim for negligence. (Dkt. No. 48.) Judgment was entered on August 31, 2016. (Dkt. No. 51.)

On September 28, 2016, Defendant filed the instant Motion for Judgment Notwithstanding the Verdict ("JNOV"). (Dkt. No. 53; *see also* Dkt. No. 54.) On November 15, 2016, Plaintiff filed a Response in Opposition to Defendant's motion. (*See* Dkt. No. 63.) For the reasons set forth herein, Defendant's motion (Dkt. No. 53) is denied.

---

[1]The jury awarded Plaintiff actual damages of $25,000 on her negligence claim and $75,000 on her slander claim. (Dkt. No. 43.)

## STANDARD OF REVIEW

Pursuant to Rule 50 of the Federal Rules of Civil Procedure, a district court may grant JNOV if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party." FED. R. CIV. P. 50(a); *see also* FED. R. CIV. P. 50(b). In evaluating a motion for JNOV, the court gives the non-movant "'the benefit of every legitimate inference in his favor'" and denies the motion if "'there was evidence upon which a jury could reasonably return a verdict'" for the non-movant. *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998) (quoting *Abasiekong v. City of Shelby et al.*, 744 F.2d 1055, 1059 (4th Cir. 1984)). In ruling on a motion for JNOV, the court does not "retry factual findings or credibility determinations reached by the jury." *Id.* (citing *Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1419 (4th Cir. 1991)). The court "assume[s] that testimony in favor of the non-moving party is credible, 'unless totally incredible on its face,' and ignore[s] the substantive weight of any evidence supporting the moving party." *Id.* (citing *Duke*, 928 F.2d at 1419).

A motion for a new trial, pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, "is governed by a different standard." *Id.* The Fourth Circuit "ha[s] recognized that," pursuant to Rule 59(a),

> [T]he district court must "set aside the verdict and grant a new trial[] if . . . (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict."

*Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 346 (4th Cir. 2014) (quoting *Knussman v. Maryland*, 272 F.3d 625, 639 (4th Cir. 2001)).

## DISCUSSION

In its post-trial motions, Defendant states that it "moves the Court, pursuant to Rules 50(b), 59, and 60 of the Federal Rules of Civil Procedure and other applicable law, for an order requiring

[P]laintiff to elect one measure of recovery for the wrong alleged, granting Defendant judgment as a matter of law or altering or amending the judgment entered in this case . . . , and for a new trial. . . ." (Dkt. No. 53 at 1 of 9.)[2] Defendant first contends that Plaintiff "should be required to elect the jury verdict upon which judgment should be entered against [the] Defendant, and the judgment should be altered and amended to clarify that only the verdict elected by Plaintiff constitutes a judgment against Defendant." (Dkt. No. 54 at 1.) Next, Defendant seeks relief pursuant to Rule 50(b), asserting it is entitled to judgment as a matter of law as to Plaintiff's claim for slander "because the only reasonable inference from the evidence presented at trial is that the subject statement was privileged and that privilege was not abused." (Dkt. No. 54 at 5.) Defendant also seeks relief pursuant to Rule 59, asserting it is entitled to a new trial for the following reasons:

A. Defendant is entitled to a new trial because the jury's verdict was inconsistent[;]

B. The Court erred in submitting punitive damages to the jury because Plaintiff failed to present any clear and convincing evidence of actual malice[; and]

C. Defendant is entitled to a new trial because no evidence was presented at trial that Defendant's conduct was reckless, wanton or willful, [and] the verdict shocks the conscience and was the result of caprice, passion and prejudice.

---

[2]Defendant stated that it filed its motion "pursuant to Rules 50(b), 59, and 60 of the Federal Rules of Civil Procedure and other applicable law." (Dkt. No. 53 at 1 of 9.) It is not clear that Rule 60 is applicable to the instant motion. Rule 60(b) provides as follows:

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding**. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

**(1)** mistake, inadvertence, surprise, or excusable neglect;
**(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
**(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
**(4)** the judgment is void;
**(5)** the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
**(6)** any other reason that justifies relief.

FED. R. CIV. P. 60(b). In any event, from a review of Defendant's Memorandum in Support of Defendant's Post-Trial Motions, it does not appear that Defendant is relying upon Rule 60. (*See generally* Dkt. No. 54.)

(Dkt. No. 54 at 8-15.) Finally, Defendant contends that it is "entitled to a new trial nisi remittitur because the verdict is excessive and unduly liberal." (Dkt. No. 54 at 16.)

Before addressing Defendant's arguments, the undersigned will briefly review the Plaintiff's allegations in this case. Plaintiff alleged that on or about November 8, 2014, she was a business invitee at the Dollar General store located in McClellanville, South Carolina, when Defendant's employees asserted that she was shoplifting. (Compl. ¶¶ 3-4.) She alleged that as a result of the actions of Defendant's employees, she "was detained and served with a Uniform Traffic Ticket for suspected shoplifting." (Compl. ¶ 5.) Plaintiff further alleged that she "was not charged with shoplifting but detained and held," and that she "asked to use the bathroom, but was denied such that she urinated on herself." (Compl. ¶ 6.) She asserted that Defendant "was negligent, reckless, willful and wanton, through its officers, agents and/or employees, in one or more of the following" manners:

> a. in calling the police and asserting that Plaintiff was shoplifting;
>
> b. in calling the police and asserting that Plaintiff had stolen something;
>
> c. in calling the police and causing the Plaintiff to be detained when there was no probable cause or evidence;
>
> d. in banning Plaintiff from the Dollar General;
>
> e. in failing to use reasonable precautions and in insisting that Plaintiff be detained; [and]
>
> f. in not taping the Plaintiff with a recorder.

(Compl. ¶ 7.) Plaintiff's claims for negligence, false imprisonment, and slander were submitted to the jury. As noted above, the jury found in favor of Plaintiff on her claims for negligence and slander; the jury found in favor of the Defendant on Plaintiff's claim for false imprisonment. (Dkt. No. 43.)

Having reviewed the factual allegations in this case, the undersigned now turns to Defendant's post-trial arguments.

## I. Election of Remedy

Defendant contends that Plaintiff "should be required to elect the jury verdict upon which judgment should be entered against the Defendant, and the judgment should be altered and amended to clarify that only the verdict elected by Plaintiff constitutes a judgment against Defendant." (Dkt. No. 54 at 1.) As Defendant notes, the jury awarded Plaintiff actual damages of $25,000 on her negligence claim and $75,000 on her slander claim. (Dkt. No. 43.) Defendant asserts the "only evidence presented to the jury at trial that could potentially support a finding of negligence or slander on the part of Defendant or its store manager was the manager's act of calling the police to report a suspected shoplifter." (Dkt. No. 54 at 2.) While Defendant denies that any wrong was committed, Defendant states that "if there was a wrong committed . . . , that one act of calling the police was the only wrong and there could be no double recovery for that single wrong." (Dkt. No. 54 at 2.)

Defendant cites *Jones by Robinson v. Winn-Dixie Greenville, Inc.*, 318 S.C. 171, 456 S.E.2d 429 (Ct. App. 1995), in support of its argument. (*See* Dkt. No. 54 at 2-4.) In *Jones by Robinson*, the jury awarded the plaintiff damages on his claims for false imprisonment as well as assault and battery. *Jones by Robinson*, 318 S.C. at 173, 456 S.E.2d at 430-31. Watson, an employee of Winn-Dixie, suspected Jones of shoplifting shoe inserts, even though Watson "admitted he lost sight of Jones several times and at no time did he see Jones conceal the shoe inserts." *Id*. at 173-74, 456 S.E.2d at 431. Watson confronted Jones about the shoe inserts, and Jones was escorted out of the store after he explained to Watson that he put the inserts on another aisle. *Id*. at 174, 456 S.E.2d at 431. The South Carolina Court of Appeals noted the following evidence:

> Jones testified that once they were outside the store, Watson began cursing

and threatening him. Watson admitted telling Jones he was "going to kick his [a __ __]" if he came back in the store again. Watson then grabbed Jones by the arm and led him back inside the store and into the store's public restroom. Watson closed the bathroom door, then told Jones to take down his pants, which Jones did. Watson was standing in front of the door. Jones testified he complied with Watson's request because he was scared and nervous and did not know what to do. Finding no evidence of any stolen merchandise, Watson allowed Jones to pull his pants back up and walked him out of the bathroom.

As Jones exited the bathroom, he was confronted by policemen, whom Watson had called after initially confronting Jones. Jones' mother was also present by this time. Watson then admitted to the police officers he found no store merchandise on Jones' person.

*Id*. at 174, 456 S.E.2d at 431.

The jury in *Jones by Robinson* returned verdicts of (a) $25,000 actual damages and $50,000 punitive damages on the claim for false imprisonment and (b) $25,000 actual damages and $50,000 punitive damages on the claim for assault and battery, but the trial court "reformed the verdict to one award of $75,000 finding Jones was entitled to only one recovery." *Id*. at 174, 456 S.E.2d at 431. The South Carolina Court of Appeals found the trial judge erred by reforming the jury's verdict because an election of remedies was unnecessary. *Id*. at 175, 456 S.E.2d at 431. The court stated, *inter alia*,

The doctrine of election of remedies involves a choice between different forms of redress afforded by law for the same injury, or different forms of proceeding on the same cause of action. Stated another way, election of remedies is the act of choosing between different remedies allowed by law on the same state of facts. *Boardman v. Lovett Enterprises, Inc.*, 283 S.C. 425, 323 S.E.2d 784 (Ct.App.1984), *rev'd on other grounds*, 287 S.C. 303, 338 S.E.2d 323 (1985). Its purpose is to prevent double redress for a single wrong. *Save Charleston Foundation v. Murray*, 286 S.C. 170, 333 S.E.2d 60 (Ct.App.1985). Where a party has asserted only one primary wrong, he is entitled to only one recovery. *Boardman*, 283 S.C. 425, 323 S.E.2d 784 (Ct.App.1984). However, the principle has no application where two separate causes of action, each based on different facts, exists. *Harmon v. Jenkins*, 282 S.C. 189, 318 S.E.2d 371 (Ct.App.1984).

Jones' action for false imprisonment is not based upon the same elements as

his action for assault and battery. False imprisonment is the deprivation of one's liberty without justification. *Caldwell v. K-Mart Corp.*, 306 S.C. 27, 410 S.E.2d 21 (Ct.App.1991). In order to recover under a theory of false imprisonment, the complainant must establish (1) the defendant restrained him; (2) the restraint was intentional; and (3) the restraint was unlawful. *Andrews v. Piedmont Air Lines*, 297 S.C. 367, 377 S.E.2d 127 (Ct.App.1989). The tort of false imprisonment does not require an actual injurious touching. False imprisonment may be committed by words alone, or by acts alone or by both, and by merely operating on the will of the individual, or by personal violence, or by both. *Gathers v. Harris Teeter Supermarket, Inc.*, 282 S.C. 220, 317 S.E.2d 748 (Ct.App.1984). On the other hand, an assault occurs when a person has been placed in reasonable fear of bodily harm by the conduct of the defendant, and a battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of its degree. *Id.*

We agree with Jones there is evidence he was the victim of both false imprisonment and assault and battery and these distinctive injuries occurred at different times and were the result of separate and distinct actions on Watson's part. Watson assaulted Jones when he threatened him outside the store. The battery occurred when Watson thereafter grabbed Jones' arm and escorted him back into the store. Even if Watson had taken no further action against Jones, Jones could have recovered damages for assault and battery. Watson, however, did take further injurious action against Jones when he escorted Jones into the bathroom, stood with his back to the door and compelled Jones to pull down his pants before allowing him to leave. We therefore find no merit in Winn-Dixie's argument that Jones is entitled to only a single recovery for a single wrong.

*Jones by Robinson*, 318 S.C. at 175-76, 456 S.E.2d at 431-32.

Defendant contends the *Jones by Robinson* case is distinguishable from the case *sub judice*, stating,

The <u>Jones by Robinson</u> case is clearly distinct from the instant case in which one alleged wrong resulted in injury to Plaintiff, and under both the negligence and slander causes of action the alleged injury of Plaintiff is the same. In the present case, the only damage Plaintiff has allegedly suffered was the result of the single act of the store manager calling the police and reporting suspected shoplifting. This is in contrast from the <u>Jones by Robinson</u> case where the Plaintiff suffered unique damages resulting from an assault and battery and separate and distinct damages arising from a separate action of the Defendant in detaining her at a later time and place.

(Dkt. No. 54 at 3.) Defendant further states,

> [U]nlike the assault and battery claim and the false imprisonment claim in the <u>Jones by Robinson</u> case, here Myers did not suffer an actionable injury based on her slander claim alone that was separate and distinct from an injury resulting from her negligence claim alone. To allow cumulative verdicts in this case would result in double recovery for a single alleged wrong, which is in conflict with the basic purpose of the election of remedies doctrine.

(Dkt. No. 54 at 4.) Plaintiff argues election of remedies is not warranted because "there is evidence of both slander and negligence." (Dkt. No. 63 at 13.) Plaintiff asserts the "slander was calling the Plaintiff a thief to the police and in front of Kareem Singleton and others," while the "negligence was calling the police for an incident that happened two days prior to this incident and misidentifying the Plaintiff." (Dkt. No. 63 at 13.)

The undersigned concludes election of remedies is not warranted in the case *sub judice*. As in *Jones by Robinson*, Plaintiff's causes of action are based upon different elements.[3] *Jones by Robinson*, 318 S.C. at 175, 456 S.E.2d at 432. Moreover, "[t]he tort of defamation allows a plaintiff to recover for injury to his or her reputation as the result of the defendant's communications to others of a false message about the plaintiff." *Swinton Creek Nursery v. Edisto Farm Credit, ACA,* 334 S.C. 469, 484, 514 S.E.2d 126, 133 (1999) (citation omitted). Damages for the claim of negligence can include loss of enjoyment of life and medical expenses. *See, e.g., Boan v. Blackwell*, 343 S.C. 498, 541 S.E.2d 242 (2001) (noting that loss of enjoyment of life is a compensable element of damages in negligence claim); *Oliver v. Blakeney*, 244 S.C. 565, 572, 137 S.E.2d 772, 776 (1964) (stating, in the context of a negligence claim, "The elements of damage which the jury could

---

[3]The elements of a claim for slander are set forth *infra* at page 10. The elements of a claim for negligence are as follows:

> (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; (3) resulting in damages to the plaintiff; and (4) damages proximately resulted from the breach of duty.

*Fettler v. Gentner*, 396 S.C. 461, 466-67, 722 S.E.2d 26, 29 (Ct. App. 2012) (quotation marks and citation omitted).

properly consider in determining the amount which plaintiff was entitled to recover included her loss of earning power, pain and suffering, and medical expenses, including any future damages resulting from permanent injuries."). Damages to reputation are not part of damages on a claim for negligence, and the jury was instructed as to the different types of damages for each claim.[4] (*See* Tr. at 164-65, 172.) In sum, election of remedies is not warranted because Plaintiff presented evidence of both slander and negligence; the elements of those two causes of action are distinct; and the damages are also distinct. Defendant's request to require Plaintiff to elect a remedy is denied.

## II. Privilege

In seeking relief pursuant to Rule 50(b),[5] Defendant asserts that it is entitled to judgment as a matter of law as to Plaintiff's claim for slander "because the only reasonable inference from the evidence presented at trial is that the subject statement was privileged and that privilege was not abused." (Dkt. No. 54 at 5.) Defendant states, "The only evidence presented at trial was that Defendant's store manager communicated to the proper authorities her honest suspicions that Plaintiff had shoplifted or was in the process of shoplifting. Therefore, there was no evidence presented that Defendant's store manager acted outside the scope of her privilege." (Dkt. No. 54 at 6.)

---

[4]The jury was also instructed as follows: "You must apply the instructions I give you concerning the claim for negligence only to that claim. . . . Similarly, you must apply the instructions I give you concerning slander only to that claim." (Tr. at 162.)

[5]Plaintiff states that she "believes and asserts that the only arguments which Defendant can make under [Rule] 50(b) would be arguments made prior to the jury getting the case." (Dkt. No. 63 at 3.) Plaintiff states,

> In this case, Defendant's FRCP motion had three grounds: (1) there is no evidence of extreme outrageous conduct that is utterly intolerable (Tr. p 136 lines 22-25; p. 137 lines 1-5); (2) the slander cause of action has a qualified privilege for statements made regarding the prosecution of whether a crime had been committed (Tr. p. 137, lines 1-25); (3) the false imprisonment cause of action should be dismissed because there has been no probable cause (Tr. p. 138, lines 1-25); (4) the Plaintiff has not carried [her] burden of proof in proving the elements of negligence (Tr. p. 139 lines 8-12).

(Dkt. No. 63 at 3.) From a review of Defendant's motion, it appears the only issue raised pursuant to Rule 50(b) is the privilege issue, which Defendant did raise prior to the jury obtaining the case. (*See generally* Dkt. No. 54.)

Plaintiff, on the other hand, argues that "[b]ecause Defendant's employee accused Plaintiff of a crime, the publication of that accusation loses its character as privileged and is actionable if there is such a disregard of the rights of the person injured to amount to malice." (Dkt. No. 63 at 15.)

The undersigned agrees with Plaintiff. "The tort of defamation allows a plaintiff to recover for injury to his or her reputation as the result of the defendant's communications to others of a false message about the plaintiff." *Erickson v. Jones Street Publishers, LLC*, 368 S.C. 444, 464, 629 S.E.2d 653, 664 (2006) (citing *Holtzscheiter v. Thomson Newspapers, Inc.*, 332 S.C. 502, 508, 506 S.E.2d 497, 501 (1998)). "Slander is a spoken defamation while libel is a written defamation or one accomplished by actions or conduct." *Id*. at 465, 629 S.E.2d at 664 (citing *Holtzscheiter*, 332 S.C. at 508, 506 S.E.2d at 501). The Supreme Court of South Carolina further explained in *Erickson*,

> In order to prove defamation, the plaintiff must show (1) a false and defamatory statement was made; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Id*. at 465, 629 S.E.2d at 664 (citations omitted).

As explained in *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 334 S.C. 469, 514 S.E.2d 126 (1999), "[i]n a defamation action, the defendant may assert the affirmative defense of conditional or qualified privilege." *Swinton Creek*, 334 S.C. at 484, 514 S.E.2d at 134. Pursuant to this defense, "one who publishes a defamatory matter concerning another is not liable for the publication if (1) the matter is published upon an occasion that makes it conditionally privileged, and (2) the privilege is not abused." *Id*. at 484, 514 S.E.2d at 134 (citing Restatement (Second) of Torts, § 593 (1977); *Bell v. Bank of Abbeville*, 208 S.C. 490, 38 S.E.2d 641 (1946)). In *Fountain v. First Reliance Bank*, 398 S.C. 434, 730 S.E.2d 305 (2012), the Supreme Court of South Carolina explained as follows:

> "'The essential elements of a conditionally privileged communication may be

enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only.'" *Manley v. Manley*, 291 S.C. 325, 331, 353 S.E.2d 312, 315 (Ct. App. 1987) (quoting *Conwell v. Spur Oil Co. of W.S.C.*, 240 S.C. 170, 178, 125 S.E.2d 270, 274-75 (1962)).

*Fountain*, 398 S.C. at 444, 730 S.E.2d at 310. "Where the occasion gives rise to a qualified privilege, there is a prima facie presumption to rebut the inference of malice, and the burden is on the plaintiff to show actual malice or that the scope of the privilege has been exceeded." *Swinton Creek*, 334 S.C. at 484-85, 514 S.E.2d at 134 (citing *Fulton v. Atl. Coast Line R. Co.*, 220 S.C. 287, 67 S.E.2d 425 (1951); 53 C.J.S. Libel and Slander § 79 (1987)); *see also Murray v. Holnam, Inc.*, 344 S.C. 129, 142, 542 S.E.2d 743, 750 (Ct. App. 2001) ("A qualified privilege does not prevent liability for defamation where the statement is made with actual malice. Common law actual malice means the defendant acted with ill will toward the plaintiff or acted recklessly or wantonly, meaning with conscious indifference toward the plaintiff's rights." (citations omitted)).

In the case *sub judice*, the Defendant asserted the defense of a qualified privilege, stating,

> [F]or the slander cause of action, there's a qualified privilege, Your Honor, as the Court knows by the statements made and the prosecution of the inquiry regarding crime which has been committed, the purpose of detecting and bringing criminal -- and if it -- when that privilege applies, which is what we have here, a statement to the police, then the plaintiff must show malice. And we would submit that there's been no testimony of ill will, malice or anything along those lines from Miss Tyler. She simply called the police and reported it was suspicious. And as such, because there's been no evidence of malice or ill will, we request a directed verdict as to that cause of action.

(Tr. at 137-38.) Plaintiff argued the matter was for the jury to determine, stating:

> [T]he law of torts . . . says it is normally a jury determination as to whether a qualified privilege is going to be proven or not. In this particular case you've got the defendant's agent waiting two days to call the police. You've also got a video that doesn't show anything about who that person might have been. And we think that those two things would defeat the privilege. That's, again, for the jury to decide.

(Tr. at 138.) The undersigned concluded there was "enough evidence for the qualified privilege issue

to go to the jury." (Tr. at 140.)

As noted above, in evaluating a motion for JNOV, the court gives the non-movant "'the benefit of every legitimate inference in his favor'" and denies the motion if "'there was evidence upon which a jury could reasonably return a verdict'" for the non-movant. *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998) (quoting *Abasiekong v. City of Shelby et al.*, 744 F.2d 1055, 1059 (4th Cir. 1984)). Plaintiff presented evidence upon which a jury could find that the Defendant acted with common law actual malice;[6] accordingly, Defendant's request for judgment as a matter of law as to the slander cause of action is denied.

Wesley Funsch, a deputy with the Charleston County Sheriff's Office, testified that he was dispatched to the Dollar General store in McClellanville in November of 2015[7] after Ms. Tyler called consolidated dispatch; he stated that when he arrived at the store, Ms. Tyler "pointed to Miss Myers and Mr. [Kareem] Singleton, and stated that those were the people she was talking about." (Tr. at 22, 25-26.) Deputy Funsch indicated that Ms. Tyler had called dispatch and stated that Plaintiff and Mr. Kareem Singleton were shoplifting. (Tr. at 26-27.) Funsch further testified as follows:

Q. And was [Ms. Tyler's accusation] based on a videotape that Miss Tyler had viewed several days earlier?

A. Um, partially. And then the other part was she thought it was suspicious that they both entered the store together, got two separate carts and then parted ways. And she felt that Miss Myers was trying to distract her, while Mr. Singleton was in the back of the store.
    At that time she made the phone call to our consolidated dispatch and asked for a deputy. And she believed--she told me she believed that Miss Myers overheard that, and told Singleton--Mr. Singleton, and that at that time they both left the store

---

[6]The undersigned further notes that Plaintiff testified Ms. Tyler accused her of stealing in front of her nephew, Kareem Singleton. (*See* Tr. at 118.)

[7]Although Deputy Funsch initially indicated the incident occurred in November of 2015, (Tr. at 25), this incident occurred in November of 2014.

without having anything in their carts.

(Tr. at 27.) Deputy Funsch stated that when he arrived at the store, he detained Plaintiff and Mr. Kareem Singleton; he took them to the sidewalk in front of the store. (Tr. at 27-28.) Funsch stated that he stayed with Plaintiff and Kareem Singleton on the sidewalk while his partner reviewed the surveillance footage. (Tr. at 27-28.) Funsch also testified as follows:

> Deputy Schroepfer exited the store and advised that Miss Tyler did not suspect them of shoplifting on today's date. He continued to advise me that on surveillance footage on November 6, 2014, that shows two subjects that appeared, in his estimation, to be Mr. Singleton and Miss Myers in the store together. And the footage shows who he thought was Miss Myers opening a package in the store with her mouth, but then walked out of the camera frame before they could see anyone putting anything on anyone's person.

(Tr. at 29.) Funsch stated that he issued Plaintiff and Mr. Singleton "field information cards" that indicated "suspected shoplifting." (Tr. at 29-30.)

Theresa Tyler, general manager of the Dollar General in McClellanville, testified that prior to the incident in November of 2014, she had seen Plaintiff in the store several times, and Plaintiff had always previously paid for her items. (Tr. at 38.) Ms. Tyler testified that on November 6, 2014, she watched some of the videotape for the aisle where she found an empty package. (Tr. at 39-40, 59.) She testified that she thought the person on the tape was the Plaintiff, though she "did not know her name . . . then," only her face. (Tr. at 41, 61.) She called the police two days later, when Plaintiff and Kareem Singleton came into the store. (Tr. at 59-63.) Ms. Tyler testified that when the police came to the store, she told them that Plaintiff had stolen something. (Tr. at 50.) Ms. Tyler testified that she suspected Plaintiff of shoplifting both on November 6 and November 8 of 2014. (Tr. at 68.)

Ms. Tyler testified that although she stated in her deposition that she "knew" it was Plaintiff on the tape, and that she "believed" Plaintiff "stole stuff from the store," Ms. Tyler was "wrong at that time," and the tape does not show Plaintiff stealing anything. (Tr. at 41-46.) She testified that

after her deposition, she "went back and watched the video further," "really watched it." (Tr. at 44.) Plaintiff testified that she attended Ms. Tyler's deposition and that before the deposition began, Ms. Tyler told Plaintiff, "I know it's you. I know you stole. I know it's you." (Tr. at 125.) Ms. Tyler testified at trial that she "never saw [Plaintiff] with [her] own eyes steal anything from Dollar General," and "the only tape that we have" does not show Plaintiff stealing anything from Dollar General. (Tr. at 45-46.) She also stated that she did not see Mr. Singleton take anything. (Tr. at 47.)

Ms. Tyler testified that part of her job is to "make sure that everything that's in the store is paid for," and "if [she] can reduce the loss in the store," she "can get paid more money." (Tr. at 51.) She testified that in 2014, she got paid approximately $4,000 "more for trying to reduce the loss in the store." (Tr. at 52.)

The video from November 6, 2014 was entered into evidence and played for the jury. As to the surveillance video, Plaintiff testified as follows:

> Q. This is not on November the 8th, this is on November the 6th. Now, was your hair like the hair of the lady on this particular –
>
> A. No.
>
> Q. Are you the same age as she is?
>
> A. No.
>
> Q. I hate to ask you this; are you the same weight she is?
>
> A. No.
>
> Q. Are you as young looking as she is?
>
> A. No.

(Tr. at 114.)

The undersigned concludes, as she did at trial, that there was sufficient evidence such that

the jury could conclude the Defendant acted "recklessly or wantonly, meaning with conscious indifference toward the plaintiff's rights." *Murray*, 344 S.C. at 142, 542 S.E.2d at 750. The jury saw the videotape, and, giving Plaintiff the benefit of every legitimate inference in her favor, the jury could have concluded that Defendant acted recklessly, or with conscious indifference towards the Plaintiff's rights, in reporting her for shoplifting. The record contains the video, which is not of high quality, as well as the following evidence: that the hairstyle of the woman in the video did not match Plaintiff's; that the woman in the video is not the same age as the Plaintiff; and that the woman in the video is not the same weight as the Plaintiff. The jury could have reasonably concluded that, aside from skin color, the Plaintiff and the woman in the video shared very few physical attributes in common. Defendant's motion for JNOV as to Plaintiff's claim for slander due to a qualified privilege is therefore denied.

### III. Consistency of Verdict

In seeking a new trial pursuant to Rule 59, Defendant first asserts it is "entitled to a new trial because the jury's verdict was inconsistent." (Dkt. No. 54 at 8.) Defendant contends that "in order for the jury to find for the Defendant on the false imprisonment claim, it had to find that Defendant's store manager had reasonable cause to believe that Plaintiff had committed the crime of shoplifting." (Dkt. No. 54 at 8.) However, in order to award Plaintiff actual damages and subsequently punitive damages on the claim for slander, Defendant asserts the "jury had to find that Defendant's store manager acted with ill will toward Plaintiff or with conscious indifference towards Plaintiff's rights." (Dkt. No. 54 at 9.) Defendant states,

> Based on the elements charged to the jury of the two causes of action above, the jury verdict as to those causes of action is inconsistent. It is inconceivable that the jury could have found that Defendant's store manager had reasonable cause to believe that Plaintiff committed the crime of shoplifting but at the same time had ill will toward Plaintiff or conscious indifference towards Plaintiff's rights. In other words, on one cause of action, the jury found that Defendant's store manager's act

of calling the police to report a suspected shoplifter was reasonable but, with the other cause of action, found that the act was performed with ill will or malice towards Plaintiff. It is logically inconsistent for a jury to find that the store manager called the police out of both a reasonable belief as to suspected shoplifting and out of ill will and malice toward the Plaintiff. The jury's inconsistent verdicts are indicative of jury confusion or misunderstanding as to the elements of the respective causes of action.

(Dkt. No. 54 at 9.)

Defendant is not entitled to a new trial based on its argument that the verdicts are inconsistent. The undersigned finds no inconsistency. As noted in *Law v. South Carolina Department of Corrections*, 368 S.C. 424, 629 S.E.2d 642 (2006),

The essence of the tort of false imprisonment consists of depriving a person of his liberty without lawful justification. To prevail on a claim for false imprisonment, the plaintiff must establish: (1) the defendant restrained the plaintiff, (2) the restraint was intentional, and (3) the restraint was unlawful.

*Law*, 368 S.C. at 440, 629 S.E.2d at 651 (citations omitted). Although the jury did find for Defendant on the claim for false imprisonment, there was testimony at trial that it was not the Defendant that restrained the Plaintiff, but the police. Deputy Funsch testified that when he and Deputy Schroepfer arrived at the Dollar General, Ms. Tyler pointed out Plaintiff and Mr. Kareem Singleton, and "stated that those were the people she was talking about." (Tr. at 26.) Deputy Funsch testified that he detained Plaintiff and Mr. Singleton on the sidewalk in front of the store. (Tr. at 27-28.) According to Deputy Funsch, when he arrived at the store, Plaintiff and Mr. Singleton had just entered their parked vehicle; Funsch "told them to put [the vehicle] in park and had them step out the vehicle." (Tr. at 33.) Deputy Funsch's testimony is consistent with Ms. Tyler's testimony; Ms. Tyler testified that she when called the police on November 8, she had not said anything to Plaintiff prior to Plaintiff leaving the store, other than "hello, how's she doing, like [Tyler] do[es] everybody that comes in the store." (Tr. at 62-64.) Ms. Tyler further testified as follows:

Q. So the police arrive in the parking lot, and tell me what happens next.

A. I'm still on the phone with dispatch, and then I hear the police officer saying, "Is that them?" And I turned around and look, and I pointed out the truck that they was in, I said, "That's them right there." And I was asked to go inside, that they would handle the rest.

(Tr. at 64.)

On this evidence, the jury could have readily concluded that Defendant did not restrain Plaintiff. Accordingly, to the extent Defendant argues that "in order for the jury to find for Defendant on the false imprisonment claim, it had to find that Defendant's store manager had reasonable cause to believe that Plaintiff had committed the crime of shoplifting," the undersigned disagrees. (*See* Dkt. No. 54 at 8.) The verdicts on the claims for false imprisonment and slander are not inconsistent, as jury heard evidence that Ms. Tyler called the police, but that Deputy Funsch actually restrained the Plaintiff. In light of the foregoing, Defendant's request for a new trial on the basis of inconsistent verdicts is denied.

## IV. Actual Malice

Defendant asserts it is entitled to a new trial pursuant to Rule 59 because the Court "erred in submitting punitive damages to the jury because Plaintiff failed to present any clear and convincing evidence of actual malice." (Dkt. No. 54 at 10.) Defendant asserts the Court erroneously failed to charge the jury "that it had to find evidence of actual malice in order to award punitive damages to Plaintiff on her slander claim," and "[a]s such, the jury was never charged with the proper elements and standard that must be met in order to award punitive damages in a defamation case in South Carolina." (Dkt. No. 54 at 11.) Defendant argues the jury should have been charged that, in order to award punitive damages on the claim for slander, the Plaintiff had to prove, "by clear and convincing evidence, that the statement was made with actual malice, meaning the Defendant either realized the statement was false or had serious reservations about its truth." (Dkt.

No. 54 at 11.)

The jury was charged as follows:

> In the earlier segment of the trial the burden of proof was by a preponderance of the evidence, or the greater weight of the evidence. That is not the same burden of proof the plaintiff has in this portion of the trial. The plaintiff has a higher burden of proof here. In order to recover punitive damages, plaintiff has the burden of proving entitlement to punitive damages by clear and convincing evidence that the defendant's actions were willful, wanton, malicious or in reckless disregard of the plaintiff's rights.
>
> A conscious failure to exercise due care constitutes willfulness. Punitive damages are allowed even when the defendant does not realize that he is invading the plaintiff's rights, so long as the act is committed in such a manner that a person of ordinary prudence would conclude it was done in reckless disregard of the rights of another.
>
> The plaintiff can not recover punitive damages based on negligent conduct. Negligence is the doing of some act which a person of ordinary prudence would not have done under similar circumstances, or failure to do what a person of ordinary prudence would have done under similar circumstances. Mere negligence will not support an award of punitive damages.

(Tr. at 226-27.)

Defendant is not entitled to a new trial. As the Supreme Court of South Carolina noted in *Erickson v. Jones Street Publishers, LLC*, 368 S.C. 444, 629 S.E.2d 653 (2006), "in order to recover punitive damages from a media defendant, a private-figure plaintiff must prove by clear and convincing evidence that the defendant acted with constitutional actual malice, *i.e.*, the defendant published the statement with knowledge it was false or with reckless disregard of whether it was false or not." *Erickson*, 368 S.C. at 466-67, 629 S.E.2d at 665 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 346-50 (1974); *Holtzscheiter v. Thomson Newspapers, Inc.*, 332 S.C. 502, 512, 506 S.E.2d 497, 503 (1998)). Defendant cites the following passage from *Gertz* in support of its argument that the court's jury instructions were erroneous: "[W]e hold that the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of

knowledge of falsity or reckless disregard for the truth." *Gertz*, 418 U.S. at 349.

*Gertz*, however, involved a media defendant. *See generally Gertz*, 418 U.S. 323. In *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985), a plurality of the Supreme Court stated,

> In *Gertz . . .* , we held that the First Amendment restricted the damages that a private individual could obtain from a publisher for a libel that involved a matter of public concern. More specifically, we held that in these circumstances the First Amendment prohibited awards of presumed and punitive damages for false and defamatory statements unless the plaintiff shows "actual malice," that is, knowledge of falsity or reckless disregard for the truth. The question presented in this case is whether this rule of *Gertz* applies when the false and defamatory statements do not involve matters of public concern.

*Dun & Bradstreet*, 472 U.S. at 751 (opinion of Powell, J.).[8] *Dun & Bradstreet* involved a private-figure plaintiff and a speech of purely private concern. *Id*. at 751-52. The plurality concluded that, "in a case with such a configuration of speech and plaintiff, the showing of actual malice needed to recover punitive damages under either *New York Times* or *Gertz* was unnecessary. . . . " *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 774 (1986) (citing *Dunn & Bradstreet*, 472 U.S. 749; *New York Times v. Sullivan*, 376 U.S. 254 (1964); *Gertz*, 418 U.S. 323). The plurality in *Dun & Bradstreet* stated, *inter alia*, "In light of the reduced constitutional value of speech involving no matters of public concern, we hold that the state interest [in preserving private reputation] adequately supports awards of presumed and punitive damages—even absent a showing of 'actual malice.'" *Dun & Bradstreet*, 472 U.S. at 761. In the case *sub judice*, the speech at issue did not involve a matter of public concern, pertained to a private-figure plaintiff, and was made by a non-media defendant. Accordingly, Defendant's request for a new trial is denied.

---

[8]Both Justice Burger and Justice White concurred in the judgment. *See Dun & Bradstreet*, 472 U.S. at 763-64 (Burger, J., concurring); *id*. at 765-74 (White, J., concurring).

### V. Punitive Damages

Defendant further seeks a new trial pursuant to Rule 59 by contending the "verdict shocks the conscience and was the result of caprice, passion and prejudice" because "no evidence was presented at trial that Defendant's conduct was reckless, wanton[,] or willful." (Dkt. No. 54 at 11.) Defendant asserts that a post-trial review of the factors required by *Gamble v. Stevenson*, 305 S.C. 104, 406 S.E.2d 350 (1991), "clearly indicate[s] that punitive damages were not appropriate in this case." (Dkt. No. 54 at 13.)

"A new trial absolute should be granted only if the verdict is so grossly excessive that it shocks the conscience of the court and clearly indicates the amount of the verdict was the result of caprice, passion, prejudice, partiality, corruption, or other improper motive." *Knoke v. S.C. Dep't of Parks, Recreation & Tourism*, 324 S.C. 136, 141, 478 S.E.2d 256, 258 (1996) (citations omitted). In *Gamble v. Stevenson*, 305 S.C. 104, 406 S.E.2d 350 (1991), the Supreme Court of South Carolina instructed as follows:

> Hereafter, to ensure that a punitive damage award is proper, the trial court shall conduct a post-trial review and may consider the following: (1) defendant's degree of culpability; (2) duration of the conduct; (3) defendant's awareness or concealment; (4) the existence of similar past conduct; (5) likelihood the award will deter the defendant or others from like conduct; (6) whether the award is reasonably related to the harm likely to result from such conduct; (7) defendant's ability to pay; and finally, (8) as noted in *Haslip*, "other factors" deemed appropriate.

*Gamble*, 305 S.C. at 111-12, 406 S.E.2d at 354 (citing *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1 (1991)); *see also Mitchell, Jr. v. Fortis Ins. Co.*, 385 S.C. 570, 587, 686 S.E.2d 176, 185 (2009) ("We now hold that *Gamble* remains relevant to the post-judgment due process analysis, but only insofar as it adds substance to the *Gore* guideposts." (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996))). In *Gore*, the Supreme Court provided the following "guideposts" for determining the reasonableness of a punitive damages award: (1) the degree of reprehensibility, (2) the ratio of the

punitive damages award to the actual harm inflicted on the plaintiff, and (3) the comparison of the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct. *Gore*, 517 U.S. at 575-85.

In the case *sub judice*, Plaintiff testified that she has been a minister in her church for ten years. (Tr. at 106.) She testified that she went to church every day; when asked what she normally did at church, she testified as follows:

> I go to church, I am the CED director. That's the Christian ed director. So what I do is set the atmosphere and the spiritual growth and the learning system for the church. Then I teach Sunday school. I minister to the congregation. And the biggest thing is, is going out and teaching the folks. And like I said, I am the Christian ed director, so I'm responsible for the spiritual growth of the church.

(Tr. at 107.) She would "travel with the kids" and was "responsible for driving the bus to take the kids where they need[ed] to be." (Tr. at 107.) She "drove the bus for the seniors," and for the seniors that are home bound, she would "go get the lunches, and . . . take th[em] back to the folks that can't come out." (Tr. at 108.)

Plaintiff testified that on November 8, after she exited the Dollar General and had gotten into the vehicle with her nephew Kareem Singleton, the police "came up and bang[ed] on the back of the car" and told them to stop. (Tr. at 115-18.) Plaintiff further testified that Ms. Tyler then "came over and she said, 'I have y'all on video for shoplifting from last week.'" (Tr. at 118.) Deputy Funsch testified that he detained Plaintiff and Mr. Kareem Singleton on the sidewalk in front of the store while his partner reviewed surveillance footage. (Tr. at 27-28.) Plaintiff testified that while she was outside with the police, she saw "all the people" from her church coming up. (Tr. at 118-19.) She further testified that while she was being held outside, she asked the officer to use the restroom, but that request was denied, and she urinated on herself. (Tr. at 119.)

Plaintiff testified that, as a minister, her character is "everything" because "you work with

children, you work with adults, grownups, and your character ha[s] to be right." (Tr. at 106.) She further testified as follows:

> Q. And what has your reputation been as far as you understand in the South Santee community?
>
> A. Well, they -- and I always say they look forward for me helping. You know. It's always they can count on me, even if there's a function going on and I don't know it was going on, they know that -- they know I'm responsible, they know they can count on me, I will drive the kids, I will drive the seniors. And I mean, I played a lot of roles in the church as far as the missionary, the CED director, the Sunday school teacher, the associate minister, you know, I help the pastor, I mean, I just -- it's my life. It's what I do. And I'm very passionate about it.

(Tr. at 109.) However, Plaintiff presented evidence that once the members of her church found out what happened at the Dollar General, "the older folks" started treating her differently. (Tr. at 125-26.) When asked if her reputation in the community had been damaged, Plaintiff stated,

> Damaged. I'm telling you, I left church because there's some old ministers and other people in the church that when you start being disrespected, looked down on, you know, like you['re] nobody anymore, you're nothing. So I just -- even though my pastor just sat me down on the front seat, my mind, mentally, I couldn't take it.

(Tr. at 128-29.)

According to Plaintiff, the experience at Dollar General affected her greatly. She testified that she was so upset that she was not able to go back to her church for three months. (Tr. at 126.) She stated,

> And -- but when I go places, I am still freaked out about having a pocketbook. If the buzzer go[es] off somewhere, I throw my two hands up. I don't have no -- don't have any control over it. You know, I said you can check my pocketbook. You know, I went to the clinic, they gave me some medicine, and it was really taking me beyond beyond. And my mom helped me, a lot of people helped me. I just stopped going, really going to stores and places. My niece started going for me. My aunt right there, she became my life, she started going -- they had her . . . start carry[ing] me to the doctor so I wouldn't drive by myself.

(Tr. at 126-27.) She testified that she still feels humiliated, embarrassed, and upset about what happened; she further stated,

> I still have problems sleeping. I get migraines headache. Never had headaches. But now I get them, you know, I get headaches now and they just come. I don't know when they [are] going to come, but it's like they [are] going to break something. But like I said, I've been going to the clinic. . . . And they gave me some depression medicine and stuff like that.

(Tr. at 130.)[9] She stated that although she is back working in the church, she is not "fully back . . . like [she] was." (Tr. at 130.) She testified that although she sometimes substitutes for a Sunday school class, she does not regularly teach Sunday school anymore. (Tr. at 131.) She does not drive seniors to the senior center any longer, nor does she drive children in the church. (Tr. at 131.)

Defendant's request for a new trial on the basis that the verdict shocks the conscience is denied. As set forth in detail above, Plaintiff presented evidence upon which a jury could find that the Defendant acted with common law actual malice. Plaintiff gave detailed testimony about her reputation--which she testified was "everything" for a minister--has been damaged in her small, close-knit community, and she gave detailed testimony about how the events at Dollar General affected her ability to work as a minister.

Turning to the *Gore* factors, as to the reprehensibility of Defendant's conduct, a court "should consider" the following:

> whether: (i) the harm caused was physical as opposed to economic; (ii) the tortious conduct evinced an indifference to or a reckless disregard for the health or safety of others; (iii) the target of the conduct had financial vulnerability; (iv) the conduct involved repeated actions or was an isolated incident; and (v) the harm was the result of intentional malice, trickery, or deceit, rather than mere accident.

---

[9]Additionally, Willie Mae Singleton testified that for a period of time after being accused of shoplifting, Plaintiff was unable to serve as a minister "because she couldn't function," and Plaintiff could not "minister to anybody when her reputation [was] . . . [in] dispute like that." (Tr. at 72.) Ms. Singleton also testified that Plaintiff was embarrassed, nervous, "crying all the time," "couldn't sleep," and "couldn't function going to stores." (Tr. at 72.)

*Mitchell, Jr. v. Fortis Ins. Co.*, 385 S.C. 570, 587, 686 S.E.2d 176, 185 (2009) (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003)). Here, Plaintiff presented evidence that she suffered and continues to suffer physical harm from the incident. Plaintiff also presented the following testimony of Ms. Tyler:

> Q. And on the video you'd agree with me, would you not, that you can not see [Plaintiff's] face, isn't that correct?
>
> A. I agree with you, yes, sir.
>
> Q. And the video doesn't have any time on it either, does it?
>
> A. Not on this one, no, sir.
>
> Q. And you can't really tell what's in the person's hand who's on the video, can you?
>
> A. Just a big white package, but that's it, yes, sir.

(Tr. at 50-51.) Ms. Tyler testified at trial that she "never saw [Plaintiff] with [her] own eyes steal anything from Dollar General," and "the only tape that we have" does not show Plaintiff stealing anything from Dollar General. (Tr. at 45-46.)

Additionally, Plaintiff testified that she attended Ms. Tyler's deposition and that before the deposition began, Ms. Tyler told Plaintiff, "I know it's you. I know you stole. I know it's you." (Tr. at 125.) At trial, however, Ms. Tyler admitted for the first time that it was not Plaintiff in the video. (Tr. at 68.) Furthermore, the record contains evidence that even though the video is of poor quality, certain features are discernible and do not match Plaintiff's features. (*See* Tr. at 114.) Given this evidence, and Ms. Tyler's financial incentive to curb shoplifting at the store, the undersigned concludes the jury could have found Defendant's conduct sufficiently reprehensible to warrant its award of punitive damages.

The second consideration is "the disparity between the actual or potential harm suffered by

the plaintiff and the amount of the punitive damages award." *Mitchell, Jr.*, 385 S.C. at 587-88, 686 S.E.2d at 185. In the case *sub judice*, the jury awarded Plaintiff $75,000 in actual damages on her slander claim and $250,000 in punitive damages as to that claim. (Dkt. No. 43; Dkt. No. 48.) The undersigned concludes the ratio of actual damages to punitive damages in this case is reasonable. The ratio is in the single digits[10] and is not excessive. *Cf. Campbell*, 538 U.S. at 425 ("Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1, or, in this case, of 145 to 1." (citations omitted)).

Finally, the last guidepost is the comparison of the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct. The undersigned concludes the award of $250,000 in punitive damages is sufficiently comparable with other awards to comport with due process. *See Miller v. City of West Columbia*, 322 S.C. 224, 471 S.E.2d 683 (1996) (award of $500,000 punitive damages in defamation case); *Kelley v. Wren*, 415 S.C. 379, 782 S.E.2d 406 (Ct. App. 2016) (award of $250,000 in punitive damages in libel case). *Cf. McAlhaney v. McElveen*, 413 S.C. 299, 775 S.E.2d 411 (Ct. App. 2015) (affirming judgment where trial court reduced punitive damages award in a defamation case from $3.25 million to $375,000).

### VI. New Trial Nisi Remittitur

Defendant asserts it is "entitled to a new trial nisi remittitur because the verdict is excessive and unduly liberal." (Dkt. No. 54 at 16.) Defendant states that it seeks this relief if the court denies its motion for a new trial. (Dkt. No. 54 at 16.) Defendant states,

> There is simply no rational explanation for the jury's verdict in this case of $100,000 in actual damages and $250,000 in punitive damages. The verdict is certainly against the clear weight of the evidence and will result in a miscarriage of

---

[10]As to Plaintiff's claim for slander, the punitive damages award is approximately 3.3 times the actual damages as to that claim. The punitive damages award is 2.5 times the total actual damages in this case.

justice if upheld or, in the alternative, not reduced. Therefore, Defendant submits the great weight of the evidence, giving the Plaintiff the presumption of evidence [s]he is entitled to, provides for a maximum recovery of an amount less than $100,000 in actual damages and $250,000 in punitive damages. Non-economic damages cannot be totally speculative or based upon whim or caprice. There is simply nothing in the evidence, without speculation, which would require an award of the magnitude determined by the jury.

(Dkt. No. 54 at 16.)

"A motion for a new trial nisi remittitur asks the trial court to reduce the verdict because the verdict is merely excessive." *James v. Horace Mann Ins. Co.*, 371 S.C. 187, 193, 638 S.E.2d 667, 670 (2006) (citation omitted); *see also Welch v. Epstein*, 342 S.C. 279, 303, 536 S.E.2d 408, 420 (Ct. App. 2000) ("[W]hen the verdict indicates the jury was unduly liberal in determining damages, the trial court alone has the power to reduce the verdict by the granting of a new trial *nisi remittitur*. A motion for new trial *nisi remittitur* asks the trial court in its discretion to reduce the verdict because it is merely excessive, although not motivated by considerations such as passion, caprice or prejudice." (citations omitted).). "In considering a motion for new trial nisi, the trial court must evaluate the adequacy of the verdict in light of the evidence presented." *Becker v. Wal-Mart Stores, Inc.*, 339 S.C. 629, 637, 529 S.E.2d 758, 762 (Ct. App. 2000).

The undersigned does not find the verdict to be excessive. As set forth above, Plaintiff testified in detail about the damages she suffered as a result of this incident. She also explained why, as a minister, the accusations against her were particularly damaging and testified that, to this day, her responsibilities in the church have not returned to the level they were prior to this incident. She testified that while she was being detained on the sidewalk, and many of the members of her congregation saw her being detained there by the police, she urinated on herself. She testified that she was humiliated, to the point of seeking medical attention, and that she continues to have migraines as well as difficulty sleeping. Accordingly, Defendant's request for a new trial nisi

remittitur is denied. *Cf. Miller v. City of West Columbia*, 322 S.C. 224, 231, 471 S.E.2d 683, 687 (1996) (finding no error in the trial court's denial of a motion for a new trial where the jury awarded $250,000 in actual damages and $500,000 in punitive damages, stating, "Broom's defamatory statement effectively destroyed Miller's reputation and ended his distinguished twenty-five year law enforcement career. Miller had been the assistant chief of police for seventeen years, and during this time he had received the highest awards available to law enforcement officers. However, after resigning from the West Columbia Police Department, Miller had difficulty obtaining employment. When considering that a person's reputation is invaluable, we conclude that Broom has failed to establish that the verdict in this matter was grossly excessive.").

## CONCLUSION

It is therefore ORDERED, for the foregoing reasons, that Defendant's Motion for Judgment Notwithstanding the Verdict (Dkt. No. 53) is denied.

AND IT IS SO ORDERED.

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

June 1, 2017
Charleston, South Carolina